# EXHIBIT A

MICHAEL K. JEANES
Clerk of the Superior Court
By Rebecca Mallard, Deputy
Date 03/12/2018 Time 16:00:48
Description                    Amount
--------- CASE# CV2018-003289 ---------
CIVIL NEW COMPLAINT             322.00

TOTAL AMOUNT                    322.00
            Receipt# 26460544

Richard C. Gramlich, (SBN 014449)

 **TIFFANY & BOSCO**
P.A.

SEVENTH FLOOR CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-4237
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0103
E-Mail: RCG@tblaw.com

*Attorneys for Plaintiff*

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| MEDIA PRINT, INC., an Arizona corporation, | No. CV 2018-003289 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| | (Breach of Contract and Bad Faith) |
| NATIONWIDE INSURANCE COMPANY OF AMERICA, an Ohio corporation; SCOTTSDALE INSURANCE COMPANY (A NATIONWIDE SUBSIDIARY), an Ohio corporation; AND BLACK AND WHITE CORPORATIONS I-X, | (Jury Trial Demanded) |
| Defendants. | |

Plaintiff, Media Print, Inc. ("Media Print"), by its attorneys, Tiffany & Bosco, P.A., for its Complaint against Defendant Nationwide Insurance Company of America ("Nationwide") and its subsidiary, Scottsdale Insurance Company ("Scottsdale Insurance") alleges as follows:

## GENERAL ALLEGATIONS

1.      Media Print is an Arizona corporation authorized to do business within the State of Arizona.

2.      Nationwide is an Ohio stock corporation authorized to conduct business within the State of Arizona, which entered into an insurance contract and caused acts to occur in Maricopa County, Arizona such that it is subject to this Court's jurisdiction and

1  venue.

2    3.    Scottsdale Insurance, a Nationwide subsidiary, is an Ohio stock corporation

3  authorized to conduct business within the State of Arizona, which entered into an insurance

4  contract and caused acts to occur in Maricopa County, Arizona such that it is subject to this

5  Court's jurisdiction and venue.

6    4.    Black and White Corporations I-X are fictitious entities which may be

7  syndicated participants in the subject Nationwide policy.   Once their true identities are

8  revealed, they will be amended herein.

9    5.    All acts complained of herein occurred within Maricopa County, Arizona.

10    6.    Media Print was the insured and covered up to $5,000,000.00 under a

11  Commercial Property Coverage policy ("Policy") issued by Nationwide/Scottsdale

12  Insurance from April 27, 2016 through April 27, 2017.

13    7.    Pursuant to the terms of the Policy, Media Print was covered for direct

14  physical loss of or damage to "Covered Property" at the "Premises" described in the

15  declarations for any covered cause of loss.

16    8.    The Covered Property included machinery and equipment, which would

17  include the HITACHI 5 UNIT WEB PRESS ("Press"), located within Media Print's rented

18  premises located at 4002 North 36th Avenue, Phoenix, Arizona  85016 ("Building").

19    9.    Pursuant to the terms of the Policy, Nationwide/Scottsdale Insurance was

20  obligated to pay the value of the damaged property or the cost of repairing or replacing

21  same within 30 days after receiving a sworn Proof of Loss.

22    10.    Nationwide/Scottsdale Insurance's Policy included the "Special Cause of

23  Loss" coverage, which covers all direct physical losses to Media Print's property and

24  equipment, unless the loss was specifically excluded or limited under the Policy.

25    11.    On or about January 19, 2017, there was a microburst rainstorm

26

-2-

1    ("Microburst") which occurred above Media Print's Building and included significant

2    burst-like gusts of wind and excessive amounts of rain, which were sufficient to cause

3    damage to the metal roof, metal siding and metal garage door of the Media Print Building

4    by popping numerous roof screws and lifting and separating the metal roof sheets and

5    metal siding on the Building, allowing a significant amount of water to pour in through the

6    damaged roof fall onto and saturate the Press and its electrical components below, causing

7    shorts and damage thereto.

8        12.    Media Print first reported this claim to Nationwide/Scottsdale Insurance on

9    or about January 26, 2017 and Nationwide/Scottsdale Insurance initially responded to same

10   on or about January 30, 2017.

11       13.    On March 9, 2017, Nationwide/Scottsdale Insurance had its insurance expert,

12   Eric Neuharth ("Neuharth") of Donan Engineering Company inspect the Media Print

13   building roof after which he reported that "no metal roof panels are lifted, peeled back or

14   missing due to wind" and that the roof had evidence of ongoing long-term water intrusion

15   issues in other areas.

16       14.    Mr. Neuharth failed to note that there was clear evidence of recent repairs to

17   the metal roof, in the form of brand new fastening screws and sealants placed along the

18   edge of the roof panels, which Media Print and its roofing contractor reported were lifted

19   above the area of the Press.

20       15.    On April 5, 2017, Nationwide/Scottsdale Insurance responded to Media

21   Print's claim and denied same, asserting that the loss was excluded pursuant to Exclusion

22   B(2)(d)(1) – wear and tear; B(2)(d)(2) – rust, corrosion, fungus, decay, deterioration . . .;

23   B(2)(f) – continuous or repeated seepage or leakage of water, or the presence or

24   condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more;

25   and B(3)(c) – faulty, inadequate or defective: (1) planning, zoning, development,

26

surveying, siding; (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; (3) materials used in repair, construction, renovation or remodeling; or (4) maintenance; of part or all of any property on or off the described premises.

16.    Nationwide/Scottsdale Insurance also claimed that the loss was limited by C. Limitations – (1) we will not pay for loss of or damage to property . . . or any loss that is a consequence or loss or damages described and limited in this section:

>    (c)    . . . damage to personal property in the building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

>    >    (1)    the building or structure first sustains damage by a covered cause of loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters;

17.    On April 6, 2017, Media Print contested the denial, asserting that the above cited exclusions were inapplicable and that the property damage was caused by rain which entered the Building as the result of damage to the roof.  (A true and correct copy of which is attached hereto as **Exhibit 1**.)

18.    Notwithstanding Media Print's request for coverage, Nationwide/Scottsdale Insurance continued to deny same, requiring Media Print to retain undersigned counsel.

19.    On or about May 19, 2017, Media Print's counsel contested Nationwide/Scottsdale Insurance's denial of coverage, thoroughly analyzing the inapplicability of the cited exclusions and limitations, and requested that Nationwide/Scottsdale Insurance revoke its denial or at least authorize an inspection of the equipment to determine the cost to repair same.  (A true and correct copy of which is

1  attached hereto as **Exhibit 2**.)  Notwithstanding same, Nationwide/Scottsdale Insurance

2  continued to deny coverage.

3      20.  On August 21, 2017, undersigned counsel again made demand upon

4  Nationwide/Scottsdale Insurance to cover the loss, due the inapplicability of the

5  exclusions; provided proof of damage to the roof; and put Nationwide/Scottsdale Insurance

6  on notice that their denial was causing Media Print to incur an estimated $20,000.00 in lost

7  profits every month, due to the loss of the use of the Press. (A true and correct copy of said

8  demand is attached hereto as **Exhibit 3**, which attached the report from D&L Commercial

9  Roofing Southwest ("D&L") reporting that it witnessed existing metal roof panels which

10  were blown loose and lifted off of the roof, due to high winds, in the area above the Press,

11  which allowed water to penetrate through the roof and onto the Press, and which panels

12  had to be resecured and sealed with new fasteners.)

13      21.  Nationwide/Scottsdale Insurance failed to respond to Media Print's August

14  21, 2017 demand for over 30 days and then continued to deny coverage in a September 28,

15  2017 letter.

16      22.  On December 1, 2017, Nationwide/Scottsdale Insurance had a second

17  insurance adjuster, Don Kesterson ("Kesterson") inspect the Media Print Building roof;

18  however, no report was provided.

19      23.  On December 11, 2017, Media Print forwarded an additional October 28,

20  2017 report from D&L confirming that they witnessed damage to the roof and had to repair

21  same, as a result of the wind storms, which resulted in the water penetration into the

22  Building and the damage to the Press. Attached to that letter were four (4) photographs

23  which clearly showed brand new fasteners and sealants being applied under the edges of

24  the lifted roof panels above the area where the Press was located. (A true and correct copy

25  of which is attached hereto as **Exhibit 4**.)

26

24.     On January 2, 2018, Media Print requested a copy of the Kesterson report; however, Nationwide/Scottsdale Insurance has refused to produce it and has continued to deny coverage, despite the fact that Media Print's damages are now estimated to be in the $700,000.00 to $750,000.00 range to replace the Press, plus $35,000 to $45,000.00 to move same as supported by Jewel Printing Machinery's estimate attached thereto.  (A true and correct copy of which is attached hereto as **Exhibit 5.**)

25.     Notwithstanding the foregoing, Nationwide/Scottsdale Insurance continue to deny Media Print's claim, claiming that there was "no evidence of damage to the roof," despite having been provided D&L's statement and photographs confirming the damage and the repairs.

26.     On February 14, 2018, Media Print made its final demand to Nationwide/Scottsdale Insurance, reattaching D&L's reports and photographs documenting the damage to the roof as a result of the storm and showing the repairs, along with Jewel Printing Machinery's estimates to replace the Press.  (A true and correct copy of which is attached hereto as **Exhibit 6.**)

27.     Notwithstanding the final February 14, 2018 demand, Nationwide/Scottsdale Insurance continue to fail to produce the Kesterson inspection report and continued to deny the claim, more than one year after it occurred, forcing the filing of the subject lawsuit.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

28.     Media Print incorporates herein all averments set forth in the paragraphs above.

29.     Media Print is an insured under the Policy.

30.     Under the Policy, Nationwide/Scottsdale Insurance has an obligation to indemnify and pay the replacement or repair costs of the Press and resulting damages.

31.     Despite Media Print's claim and demands, Nationwide/Scottsdale Insurance breached its Policy, by failing and refusing to indemnify and cover Media Print, forcing Media Print to file the subject suit.

32.     As a result of Nationwide's failure to honor its indemnity/coverage obligations under the Policy, Media Print has been damaged in an amount to be determined at trial, which is not less than $1,000,000.00.

33.     This matter arises out of contract such that Media Print, upon prevailing, is entitled to recover its attorney's fees and costs pursuant to the terms of the Policy and/or A.R.S. § 12-341.01.

## SECOND CLAIM FOR RELIEF

### (Bad Faith)

34.     Media Print incorporates herein all averments set forth in the paragraphs above.

35.     Nationwide/Scottsdale Insurance knowingly and/or recklessly denied coverage and payment of Media Print's damages.

36.     Nationwide/Scottsdale Insurance's knowing denial of coverage was unreasonable.

37.     Nationwide/Scottsdale Insurance's failure to cover and pay Media Print's damages is unreasonable and in bad faith for the reasons outlined herein, including, without limitation:

A.     Nationwide/Scottsdale Insurance denied covering Media Print's damages, despite the fact that their obligation to cover the claim was not "fairly debatable;"

B.     Nationwide/Scottsdale Insurance failed to promptly investigate, adjust and issue payments due under their Policy with Media Print;

C.   .Nationwide/Scottsdale Insurance placed their interests before those of its insured, by seeking to reduce their own exposure, while Media Print was forced to suffer losses which Nationwide/Scottsdale Insurance agreed to pay and had a contractual duty to pay;

D.   Nationwide/Scottsdale Insurance deprived Media Print of the benefits and security it was entitled to under the Policy;

E.   Nationwide/Scottsdale Insurance have forced Media Print to file suit to recover the benefits it is owed under the Policy; and

F.   Nationwide/Scottsdale Insurance's refusal to pay Media Print's damages is otherwise a knowing and/or reckless violation of controlling law and industry standard.

38.   Nationwide/Scottsdale Insurance knowingly and intentionally failed to pay Media Print's damages, despite their knowledge that Media Print would incur unjustified and significant financial harm as a result of Nationwide/Scottsdale Insurance's conduct.

39.   As a result of Nationwide/Scottsdale Insurance's unreasonable failure to honor their coverage obligations, Media Print has been damaged in an amount to be determined at trial.

**WHEREFORE**, Media Print prays for judgment against Nationwide/Scottsdale Insurance on Count One and Two of the Complaint, as follows:

1.   Awarding judgment in Media Print's favor and against Nationwide/Scottsdale Insurance in the amount of the special, general, consequential and loss of use damages incurred by Media Print, as the result of the unlawful acts pled above, plus prejudgment interest and attorney's fees and costs as permitted by law;

2.   Punitive damages; and

3.     For such further and additional relief as the Court deems necessary and/or proper under the circumstances.

DATED this ___ day of March, 2018.

                                    TIFFANY & BOSCO, P.A.

                                    By: _____
                                        Richard C. Gramlich
                                        Seventh Floor Camelback Esplanade II
                                        2525 East Camelback Road
                                        Phoenix, Arizona 85016
                                        *Attorneys for Plaintiff*

# EXHIBIT 1

April 6, 2017

**SENT VIA CERTIFIED/RETURN RECEIPT**

Nationwide
c/o Chris Logan
P.O. Box 4120
Scottsdale, AZ 85261-4120

|  |  |  |
|---|---|---|
| Re: | Insured: | Media Print, Inc. |
|  | Policy No(s): | CP10052212 |
|  | Claim No(s): | 01748907 |
|  | Date of Loss: | January 19, 2017 |
|  | Loss Location: | 4002 North 36th Avenue, Phoenix, AZ 85019 |
|  | Type of Loss: | Water Damage |

Dear Mr. Logan:

I am in receipt of your April 5, 2017 letter denying payment for the damage caused to my printing press, as the result of water that came in through a roof failure.

With respect to the sections of the policy that you cited, it does not seem to me that they apply. As your expert, Mr. Neuharth noted in his report, the water came through the exterior metal roofing and then broke through the interior vinyl roofing installation. The saturation and tearing of the interior vinyl roofing installation, which allowed the water to spill onto my printing press was not the result of "wear and tear", "rust" or "corrosion", nor was it a "continuous" or "repeated" leak, over a period of fourteen (14) days or more. Although the roof had some prior sporadic small leaks, there were not fourteen (14) of them and they never spanned over a fourteen (14) day period of time. The vinyl interior roofing installation suddenly burst over my equipment the day of the rain event, on January 19, 2017, and had not leaked there before. There was no prior "workmanship" or "repairs" to the roof or its interior vinyl roofing installation in this area above my equipment, prior to the loss.

Because the rain first caused damage to the roof's interior vinyl liner (by ripping it) and then fell through that rip onto my equipment, I believe this loss is covered under my policy.

What would be the point of carrying insurance like this if it is not going to cover my personal property from a sudden water loss through a tear in the roofing materials?

I am requesting that you reconsider your denial and cover the damage to my equipment and my loss printing job, that was in the process, at the time of the damage.

Sincerely,


Jeff Guenther

# EXHIBIT 2



TIFFANY
& BOSCO
——— P.A. ———

Richard C. Gramlich
**Attorney At Law**
(602) 255-6079
_rcg@tblaw.com_

May 19, 2017

**SENT VIA CERTIFIED/RETURN RECEIPT**
Nationwide
c/o Chris Logan
P.O. Box 4120
Scottsdale, AZ 85261-4120

Re:  Insured:          Media Print, Inc.
     Policy No(s):     CP10052212
     Claim No(s):      01748907
     Date of Loss:     January 19, 2017
     Loss Location:    4002 North 36th Avenue, Phoenix, AZ 85019
     Type of Loss:     Water Damage

Dear Mr. Logan:

This firm has been retained to respond to your April 5, 2017 letter denying payment for the damage caused to Media Print, Inc.'s ("Media Print") printing press, as the result of water that came in through a roof failure.

As your expert, Mr. Neuharth noted in his report, the water came through the exterior metal roofing and then broke through the interior vinyl roofing insulation. The saturation and tearing of the interior vinyl roofing insulation, which allowed the water to spill onto the printing press, was not the result of "wear and tear", "rust" or "corrosion", nor was it a "continuous" or "repeated" leak, over a period of fourteen (14) days or more. Although the roof had some prior sporadic small leaks, there were not fourteen (14) of them and they never spanned over a fourteen (14) day period of time. The vinyl interior roofing insulation suddenly burst over the equipment the day of the rain event, on January 19, 2017, and had not leaked there before. There was no prior "workmanship" or "repairs" to the roof or its interior vinyl roofing insulation in this area above the equipment, prior to the loss.

Because the rain first caused damage to the roof's interior vinyl liner (by ripping it) and then fell through that rip onto the equipment, it is a covered loss under the policy. With respect to the operative policy terms, Media Print's Commercial Property Coverage covers "direct physical loss of or damage to Covered Property at the premises, described in the Declarations, caused by or resulting from any Covered Cause of Loss." (See Building and Property Coverage Form, at ¶ A.) Covered Causes of Loss include any "direct physical loss unless the loss is excluded or limited in this policy." (See Causes of Loss – Special Form, at ¶A.) As such, Media Print's damage/direct physical loss to its printing equipment is covered unless specifically excluded.

Camelback Esplanade II, Seventh Floor    602.255.6000 PHONE
2525 East Camelback Road                 602.255.0103 FAX
Phoenix, Arizona 85016-4229



TIFFANY
& BOSCO
——— P.A. ———

Chris Logan
Nationwide
May 19, 2017
Page 2

The exclusions that you have cited are either inapplicable or not clear enough to exclude coverage. Exclusion (B)(2)(d)(1) "Wear and tear; (2) Rust or other corrosion . . ." is intended to apply to the damaged property itself, which was not actually damaged, but simply worn, torn, rusted or corroded. In this case, the equipment was damaged and it was not because of "wear, tear or rust" of the equipment, it was because of a failure in the roof which allowed in rain.

Exclusion (B)(2)(f) "Continuous or repeated seepage or leakage of water . . . that occurs over a period of 14 days or more" arguably could apply to a roof; however, in this case there had been no repeated seepage or leakage of water at this section of the roof over this equipment. Instead, there was a single rain event, a failure of the roof and its interior lining, and damage to the equipment, all of which occurred on January 19, 2017.  With respect to Exclusion (B)(3)(c)(2), which excludes "loss or damage caused by or resulting from . . . design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction" same is not applicable because there has been no work or repairs to the roof over this equipment, prior to the failure.

Finally, with respect to the Limitations (C)1(c)(1), which limits payment for loss or damage to "personal property in the building . . . caused by or resulting from rain . . . unless: The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters . . ." same is not applicable because the rain did come through the roof, which did first sustain damage, the bursting of its interior liner, before the Property Damage Occurred to Media Print's equipment. Moreover, as explained above, there is no specific exclusion which you have cited regarding loss to property as the result of rain coming through a roof.

As you should note, Arizona courts strictly interpret insurance policies to provide coverage unless they clearly and unambiguously exclude the coverage, based upon a layperson's reading of the policy and reasonable expectations. State Farm v. Gibbs, 139 Ariz. 274, 678 P.2d 459 (App. Div. 1 1983). Media Print certainly expected that damage to its equipment from rain coming through the roof of the building would be covered by its policy. As I have explained above, the policy does not clearly exclude same.

Media Print has estimated that the cost to inspect the equipment for damage is between $20,000 - $50,000 and the cost to repair the damage to its printing press could be between $150,000 to $250,000. (See enclosed estimate from Jewell Printing Machinery.)



**TIFFANY & BOSCO**
P.A.

Chris Logan
Nationwide
May 19, 2017
Page 3


    Based upon the foregoing, I am hereby demanding that Nationwide cover this loss in the
estimated amount or face a claim for breach of contract and bad faith.


                    Sincerely,

                    **TIFFANY & BOSCO, P.A.**

                    Richard C. Gramlich
                    For the Firm


RCG/ne
cc:  Jamie Harr



**JEWELL**
PRINTING MACHINERY

Jeffery Guenther
Jamie Harr
Media Print Inc
4002 N 36th Ave,
Phoenix, AZ 85019

April 5th, 2017

Gentleman:

As per your request I am submitting this letter to you regarding the evaluation we performed on your Hitachi Web press back on January 23, 2017. Please review this and let me know if we can be of further assistance.

The evaluation is due directly to the incident on Thursday 1-19-17 when the roof above the press failed which resulted in water pouring down on the press in several different locations causing severe electrical shorts and other forms of damage.

I wish I could present you with a concrete estimate but due to the unknown degree of damage found that is impossible, the evaluation process could be as much as $50,000 and as little as $ 20,000 and will require one week or possibly longer to complete.

This cost of evaluation does not include any repair of the press, only the evaluation. Repairs could easily run more than $ 150,000 to $250,000 depending on what damage we find and if the press is not beyond repair or has been damaged to a degree that it is deemed not usable as a long-term fixture of your business in future years as it would have been pre-damage.

Regards,

Frank Jewell
Jewell Printing Machinery LLC
Jewellprintingmachinery.com

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _E IC_   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
ELROSS   5-22-17

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

Nationwide
C/O Chris Logan
P.O. Box 4120
Scottsdale, AZ 85261-4120

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7008 1830 0000 8454 4101

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here
5/19/17

7008 1830 0000 8454 4101

Sent To  Chris Logan - Nationwide
Street, Apt. No.; or PO Box No.  P.O. Box 4120
City, State, ZIP+4  Scottsdale, AZ 85261-4120

PS Form 3800, August 2006   See Reverse for Instructions

# EXHIBIT 3



**TIFFANY**
**& BOSCO**
P.A.

Richard C. Gramlich
**Attorney At Law**
(602) 255-6079
*rcg@tblaw.com*

August 21, 2017

<u>*Sent Via Email to bmoorhead@selmanlaw.com*</u>
<u>*And First Class Mail*</u>

Nationwide/Chris Logan
c/o Bridget A. Moorhead
SELMAN BREITMAN, LLP
101 West Broadway, Suite 1330
San Diego, California  92101

| | | |
|---|---|---|
| Re: | **Insured:** | **Media Print, Inc.** |
| | **Your File No.:** | **380.42284** |
| | **Policy No(s):** | **CP10052212** |
| | **Claim No(s):** | **01748907** |
| | **Date of Loss:** | **January 19, 2017** |
| | **Loss Location:** | **4002 North 36th Avenue, Phoenix, AZ 85019** |
| | **Type of Loss:** | **Water Damage** |

Dear Mr. Logan and Ms. Moorhead:

As you are aware, this firm has been retained by Media Print, Inc. ("Media Print") regarding its damage claim to its printing press, as the result of water that came in through a roof failure.

I am responding to Ms. Moorhead's June 7, 2017 coverage opinion letter, which claims there is no coverage because the rain water came through existing penetrations in the roof, purportedly caused by "wear, tear and deterioration," and not as the result of damage to the roof by the storm that evening; and/or that there has been continuing repeated water leaks through this roof such that the damage to Mr. Harr's equipment is not covered. In following up on these claimed exclusions, I requested clarification from the roofing contractor, which repaired the roof immediately following the storm. I enclose herein a letter from D&L Commercial Roofing Southwest ("D&L") dated August 8, 2017 which makes clear that the storm event which occurred on January 19th caused existing metal roof panels to be blown loose and lifted off the roof, due to high winds, in the area above the yellow printing press, such that the panels had to be re-secured and sealed with new fasteners. (*See* enclosed letter.) D&L made clear that the "cause of

Camelback Esplanade II, Seventh Floor    602.255.6000 PHONE
2525 East Camelback Road                 602.255.0103 FAX
Phoenix, Arizona 85016-4229

**TB** **TIFFANY**
**&BOSCO**
———— P.A. ————

Nationwide/Chris Logan
c/o Bridget A. Moorhead
SELMAN BREITMAN, LLP
August 21, 2017
Page 2

damage was due to extreme high winds and heavy rain" causing "metal roof panels . [to be] . . . lifted by high winds." *Id.* This report is directly from the roofing company, which inspected the damage to the roof and repaired same following the storm.

Your roofing expert, Donan, did not inspect the roof until March 9, 2017, which was two months after the storm and after all of the damage to the roof had been repaired, which explains his finding that "no metal roof panels are lifted, peeled back or missing due to wind."

While it is acknowledged that this roof was generally in poor shape and had numerous previous leaks and repairs in other areas, those areas were not above this press. The damage to this press occurred on January 19, 2017 as a direct result of water coming through the roof above the press as a direct result of the winds damaging the roof (*see* enclosed letter). The Donan engineer report clearly shows photographs of fresh repairs made by D&L to the damage caused to the roof by the January 19, 2017 storm.

The damage to the press was not the result of "wear and tear," "rust" or "corrosion," nor was it a "continuous" or "repeated" leak, over a period of fourteen (14) days or more. Although the roof had some prior sporadic small leaks, they never spanned over a fourteen (14) day period of time. There was no prior "workmanship" or "repairs" to the roof or its interior vinyl roofing insulation in this area above the equipment, prior to the loss.

Because the rain first caused damage to the roof, by lifting a metal panel, and its interior vinyl liner, by ripping it, and then fell through the lifted roof panels and the vinyl liner onto the equipment, it is a covered loss under the policy. With respect to the operative policy terms, Media Print's Commercial Property Coverage covers "direct physical loss of or damage to Covered Property at the premises, described in the Declarations, caused by or resulting from any Covered Cause of Loss." (See Building and Property Coverage Form, at ¶ A.) Covered Causes of Loss include any "direct physical loss unless the loss is excluded or limited in this policy." (See Causes of Loss – Special Form, at ¶A.) As such, Media Print's damage/direct physical loss to its printing equipment is covered unless specifically excluded.



**TIFFANY & BOSCO**
P.A.

Nationwide/Chris Logan
c/o Bridget A. Moorhead
SELMAN BREITMAN, LLP
August 21, 2017
Page 3

The exclusions that you have cited are either inapplicable or not clear enough to exclude coverage. Exclusion (B)(2)(d)(1) "Wear and tear; (2) Rust or other corrosion . . ." is intended to apply to the damaged property itself, which was not actually damaged, but simply worn, torn, rusted or corroded. In this case, the equipment was damaged and it was not because of "wear, tear or rust" of the equipment, it was because of a failure in the roof which allowed in rain.

Exclusion (B)(2)(f) "Continuous or repeated seepage or leakage of water . . . that occurs over a period of 14 days or more" arguably could apply to a roof; however, in this case there had been no repeated seepage or leakage of water at this section of the roof over this equipment. Instead, there was a single rain event, damage to the roof and its interior lining, and damage to the equipment, all of which occurred on January 19, 2017. With respect to Exclusion (B)(3)(c)(2), which excludes "loss or damage caused by or resulting from . . . design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction" same is not applicable because there had been no recent repairs to the roof over this equipment, prior to the January 19, 2017 storm and roof damage.

Finally, with respect to the Limitations (C)1(c)(1), which limits payment for loss or damage to "personal property in the building . . . caused by or resulting from rain . . . unless: The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters . . ." same is not applicable because the rain did come through the roof, which did first sustain damage, the lifting of the roof panels and the bursting of its interior liner, before the Property Damage Occurred to Media Print's equipment. Moreover, as explained above, there is no specific exclusion which you have cited regarding loss to property as the result of rain coming through a roof.

As you should note, Arizona courts strictly interpret insurance policies to provide coverage unless they clearly and unambiguously exclude the coverage, based upon a layperson's reading of the policy and reasonable expectations. State Farm v. Gibbs, 139 Ariz. 274, 678 P.2d 459 (App. Div. 1 1983). Media Print certainly expected that damage to its equipment from rain coming through damage to the roof of the building would be



**TIFFANY & BOSCO**
P.A.

Nationwide/Chris Logan
c/o Bridget A. Moorhead
SELMAN BREITMAN, LLP
August 21, 2017
Page 4

covered by its policy. As I have explained above, the policy does not clearly exclude same.

Media Print has estimated that the cost to inspect the equipment for damage is between $20,000.00 and $50,000.00 and the cost to repair the damage to its printing press could be between $150,000.00 and $250,000.00. (*See* enclosed estimate from Jewell Printing Machinery.) As a result of Nationwide's continued denial of coverage in this matter, Media Print continues to lose the use of this press and has continued to incur significant damages in the form of lost profits and lost productivity caused by having to either turn away jobs that required this size of a press or trying to perform jobs on a larger press which are inefficient and actually result in a loss to Media Print. Please be advised that Nationwide's continued bad faith denial of coverage on this claim is costing Media Print an estimated $20,000.00 in damages every month.

Based upon the foregoing, I am hereby demanding that Nationwide cover this loss in the estimated amount or face a claim for breach of contract and bad faith.

Sincerely,

TIFFANY & BOSCO, P.A.

Richard C. Gramlich
For the Firm

RCG/ef
Enclosures
cc: Jamie Harr



**D & L Commercial Roofing Southwest**

Roofing & Water Proofing Solutions Since 1980
2942 N. 24th. Street Suite 114 Phoenix, AZ. 85016
Office (602) 644-2493  Fax (602) 726-8597  Lic.#300036
Serving All of Arizona

Date: 8/8/17

Name:  Attila Veres

Address:  4002 N. 36th Ave.

City:   Phoenix, AZ.

Telephone: 602 321- 0177

RE:  Roof Evaluation for building leaks at 4002 N. 36th Ave.  Phoenix, Az.

1) Upon our inspection after storm activity on January 19th.

2) Existing metal wall panels had been blown off and loose; metal roof panels were also lifted by high winds in this same area. This area is located over a large yellow printing press.

3) Existing roof panels needed to be re-secured with sealant and new fasteners.

4) Cause of damage was due to extreme high winds and heavy rain.

Thank You for your Business

Greg DiMatteo

Greg D DiMatteo
Digitally signed by Greg D DiMatteo
DN: cn=Greg D DiMatteo, o=US, o=D & L
Commercial Roofing Southwest,
email=greg@dlsouthwest.com
Date: 2017.08.08 17:53:49 -07'00'

www.dlcommercialroofingsouthwest.com
(888) 905-8450

# EXHIBIT 4



Elizabeth L. Franklin
Paralegal to
Richard C. Gramlich
(602) 255-6004
*elfranklin@tblaw.com*

December 11, 2017

***Sent Via Email to bmoorhead@selmanlaw.com
And First Class Mail***

Nationwide/Chris Logan
c/o Bridget A. Moorhead
**SELMAN BREITMAN, LLP**
101 West Broadway, Suite 1330
San Diego, California  92101

Re:   **Insured:**          **Media Print, Inc.**
      **Your File No.:**    **380.42284**
      **Policy No(s):**     **CP10052212**
      **Claim No(s):**      **01748907**
      **Date of Loss:**     **January 19, 2017**
      **Loss Location:**    **4002 North 36th Avenue, Phoenix, AZ 85019**
      **Type of Loss:**     **Water Damage**

Dear Mr. Logan and Ms. Moorhead:

    Please find enclosed D&L Commercial Roofing Southwest's statement of facts and recommendations dated November 30, 2017 and four photographs for your consideration regarding the above matter.

                    Sincerely,

                    TIFFANY & BOSCO, P.A.

                    Elizabeth Franklin
                    Paralegal to Richard C. Gramlich

Enclosures
cc:  Jamie Harr

Camelback Esplanade II, Seventh Floor   602.255.6000 Phone

2525 East Camelback Road              602.255.0103 Fax

Phoenix, Arizona 85016-4229

Richard C. Gramlich
_____

**From:**        jamie·harr <jamieharr2001@gmail.com>
**Sent:**        Friday, December 1, 2017 9:49 AM
**To:**          Richard C. Gramlich
**Subject:**     Pics


---------- Forwarded message ----------
From: "J Guenther" <jgprints@gmail.com>
Date: Oct 30, 2017 8:10 AM
Subject: Fwd: Further Clarification Needed
To: "jamie harr" <jamieharr2001@gmail.com>
Cc:


Sent from my iPhone

Begin forwarded message:

> **From:** "D & L Roofing Southwest" <greg@dlsouthwest.com>
> **Date:** October 28, 2017 at 2:41:47 PM MST
> **To:** "'Jeffrey Guenther'" <jgprints@gmail.com>
> **Subject: RE: Further Clarification Needed**
>
> Hello Jeff,
>
>
> Below is a statement of facts regarding the micro burst and heavy rain storms that occurred on January 19, 2016. Also attached are some pictures of the area which was most affected by this storm; these are completed pictures. No pictures were taken prior to repairs as it was all hands on deck to get repairs completed, more storms were on the way.
>
>
> 1) We were in the process of performing preventive maintenance on the entire 20,000sq foot building, at no time were we in progress of any re-roofing or taking the existing roof apart, in other words opening it up.
>
> 2) Prior to the micro burst occurring on 1/19 and 1/20/16 the A/C units were worked on and all waterproofed. We know they were watertight as they had no leaks in any prior storms.
>
> 3) When we arrived on-site after the 1/19/16 storm Media Print directed us to where new leak problems occurred, they were over a large printing press. Floors were still wet and it appeared as though a large volume of water had leaked in this area. There was no more water coming in at this time, we went to inspect the roof area above. There was still standing water behind the A/C units, as this area will fill to a point before spilling over onto an open runway to exit. The fact that no water was still coming inside told us the completed repairs behind the A/C  units was in a watertight condition. Further inspection to determine where the leaks occurred we found loose panel seams approximately eight to ten feet directly above the A/C units which are over this printing press. There were loose and missing screws which were

1

laying in the area of these panel seams. These panels were pulled loose from the excessive wind, we could lift the ends of the panels with ease. We found moisture underneath these panel laps and could see where water had blown under these laps and traveled on top of the existing insulation panels directly under the roof panels. Existing insulation panels have a plastic wrapping over them, water traveled in from these panel seams from the excessive force caused by the micro burst. Moisture traveled on top of insulation panels flowing down to a termination point in the insulation which occurred where A/C duct work was located under the existing roofing panels and then coming down inside the building. This duct work is exposed and located directly above the large printing press. With the large volume of rain coupled with the high winds lifting the roof panels, a trough was created on top of the insulation panels channeling all moisture into the building over this printing press area. This panel seam runs the distance of the building, other areas were found to have this condition as well.

4)  We removed remaining loose screws added new sealants under this panel seam and added new larger diameter fasteners. There were more storms that came in after completed repairs with no leak problems in this area.

5)  No additional charges were billed to our customer.

6)  Pictures attached 1,2,3 and 5. Pictures 1,2, and 3 show the repaired panel seam, picture 5 is taken above and the A/C units are visible.

Thank You

Greg DiMatteo

D & L Commercial Roofing Southwest

602-301-0806

From: Jeffrey Guenther [mailto:jgprints@gmail.com]
Sent: Tuesday, October 10, 2017 7:37 AM
To: greg@dlsouthwest.com
Cc: Michael Morano <mmorano@metrophoenixbank.com>; Mary Myron
<mmyron@metrophoenixbank.com>; Adam Tolman <adam@tolmancpa.com>; jamie harr
<jamieharr2001@gmail.com>; jgprints@gmail.com
Subject: Fwd: Further Clarification Needed









# EXHIBIT 5



**TIFFANY**
**& BOSCO**
P.A.

Richard C. Gramlich
**Attorney At Law**
(602) 255-6079
*rcg@tblaw.com*

January 2, 2018

*Sent Via Email to bmoorhead@selmanlaw.com*
*And First Class Mail*

Bridget A. Moorhead
SELMAN BREITMAN, LLP
101 West Broadway, Suite 1330
San Diego, California 92101

|  |  |  |
|---|---|---|
| Re: | Insured: | **Media Print, Inc.** |
|  | Your File No.: | **380.42284** |
|  | Policy No(s): | **CP10052212** |
|  | Claim No(s): | **01748907** |
|  | Date of Loss: | **January 19, 2017** |
|  | Loss Location: | **4002 North 36th Avenue, Phoenix, AZ 85019** |
|  | Type of Loss: | **Water Damage** |

Dear Bridget:

As you are aware, it has now been a month since we allowed your expert a second opportunity to inspect Media Print's building, roof and printing press, on December 1, 2017 and I forwarded to you D&L Commercial Roofing Southwest's statement regarding the roof repairs it made following the date of loss and the photographs it took. The photographs clearly show that there were lifted panels on the roof above the area of the loss, which had to be screwed back down and sealed.

It has been over seven months since I first made demand on this matter. Due to the length of time in which the damaged press has been sitting, with moisture and/or water in its components, the press is likely not repairable. Therefore, we obtained an estimate from Jewell Printing Machinery of the cost to replace this equipment, with like kind used equipment, which estimate is in the $700,000 to $750,000 range, plus $35,000 to $40,000 to remove the press.

www.tblaw.com

Camelback Esplanade II, Seventh Floor    602.255.6000 PHONE
2525 East Camelback Road                 602.255.0103 FAX
Phoenix, Arizona 85016-4229



Bridget A. Moorhead
SELMAN BREITMAN, LLP
January 2, 2018
Page 2

Based upon the foregoing, I am hereby demanding the sum of **$790,000** in settlement of Media Print's claim against Scottsdale Indemnity Company for coverage under the policy and the bad faith claim, which I believe Media Print now has, given Scottsdale Indemnity Company's delay and bad faith in adjusting this claim.

Sincerely,

TIFFANY & BOSCO, P.A.

Richard C. Gramlich
For the Firm

RCG/ef
Enclosure
cc:  Jamie Harr



Media Print Inc
4002 N 36th Ave,
Phoenix, AZ 85019
December 18, 2017

Dear members and representing individuals,
As per your request I am submitting this letter to hopefully answer a few questions regarding the Hitachi 5 unit web press you have on your floor.
As we all know the press was damaged by a major roof leak which allowed massive amounts of water to drain onto and into the press and its accessories. We spent many hours troubleshooting the electrical system at that time to see what damage we could find. We discovered SEVERAL contactors, relays and other electrical components that were damaged by either water directly or by the shorting out of circuits which damaged items indirectly. We were never able to finalize the list of problems due to the debates over who was going to pay for the time necessary to bring this to a close. Please note that this was only the electrical system, I have serious concerns of other water damage now that the press has set idle for so long. We have numerous bearings, bushings, machined surfaces that more than likely have been damaged by the water. I fully expect the see serious rust issues when and if we are allowed to tear into the press.
I would expect the charges to dissemble, inspect and evaluate the press could exceed $ 200,000.00. In order to determine the extent of the damage the press would need to be torn down further than if we were just going to relocate it. All guards, cylinders, bearing and ink systems would need to be removed from the press, I would expect to spend 30 to 45 days evaluating the press.

# JEWELL
## PRINTING MACHINERY

You also asked me what a replacement press would cost. I have checked with a few of my associates and the number I am hearing is $ 700,000 to 750,00.00 which would be an installed price. I would estimate the cost to remove your press and load it onto transports and I assume take to the scrap yard to be in the area of $ 35,000 to 40,000.00.

I hope this helps you get the process moving forward.

Regards

Frank Jewell
Jewell Printing Machinery
Jewellprintingmachinery.com

# EXHIBIT 6



**TIFFANY**
**& BOSCO**
— P. A. —

Richard C. Gramlich
**Attorney At Law**
(602) 255-6079
*rcg@tblaw.com*

February 14, 2018

*Sent Via Email to bmoorhead@selmanlaw.com*
*And First Class Mail*

Nationwide/Chris Logan
c/o Bridget A. Moorhead
**SELMAN BREITMAN, LLP**
101 West Broadway, Suite 1330
San Diego, California  92101

|   |   |   |
|---|---|---|
| Re: | **Insured:** | **Media Print, Inc.** |
|  | **Your File No.:** | **380.42284** |
|  | **Policy No(s):** | **CP10052212** |
|  | **Claim No(s):** | **01748907** |
|  | **Date of Loss:** | **January 19, 2017** |
|  | **Loss Location:** | **4002 North 36th Avenue, Phoenix, AZ 85019** |
|  | **Type of Loss:** | **Water Damage** |

Dear Mr. Logan and Ms. Moorhead:

As you are aware, this firm has been retained by Media Print, Inc. ("Media Print") regarding its damage claim to its printing press, as the result of water that came in through a roof failure.

I am responding to Ms. Moorhead's February 7, 2018 coverage denial letter, which claims there is no coverage because the rain water came through existing penetrations in the roof, purportedly caused by "wear, tear and deterioration," and not as the result of damage to the roof by the storm that evening; and/or that there has been continuing repeated water leaks through this roof such that the damage to Mr. Harr's equipment is not covered. Throughout her letter, Ms. Moorhead claims that there were no reports or evidence of "damage to the roof," which allowed water in and damaged the printing press, and that the roofing contractor which maintains this roof and performed repairs after the storm, D&L Commercial Roofing Southwest ("D&L") "does not report that they have replaced or repaired any damaged roofing panels and no photos of damaged roofing panels have been provided." This statement completely contradicts

Camelback Esplanade II, Seventh Floor      602.255.6000 PHONE
2525 East Camelback Road      602.255.0103 FAX
Phoenix, Arizona 85016-4229



**TIFFANY**
**& BOSCO**
——— P.A. ———

Nationwide/Chris Logan
c/o Bridget A. Moorhead
SELMAN BREITMAN, LLP
February 14, 2018
Page 2

what D&L has reported on at least three occasions. I enclose herein a letter from D&L, dated August 8, 2017, which makes clear that the storm event on January 19th caused:

> Existing metal wall panels have been blown off and loose; metal roof panels were also lifted by high winds in this same area.

I also enclosed D&L's October 28, 2017 email and November 30, 2017 letter, which reiterated that prior to the January 19, 2017 microburst, the roof had undergone preventative maintenance and it, along with the air conditioning units, had all been waterproofed and had <u>no leaks</u> prior to the subject storm. (*See* enclosed.) The email and letter go on to state that following the January 19, 2017 storm, D&L:

> Found loose panel seams approximately 8' to 10' directly above the AC units which are over this printing press. They were loose and missing screws which were lying in the area of these panel seams. <u>These panels were pulled loose from the excessive wind. We could lift the ends of the panels with ease . . . With the large volume of rain coupled with the high winds lifting the roof panels, a trough was created on top of the insulation panels channeling all moisture into the building over this printing press area.</u> (See enclosed.)

Attached were photographs which clearly showed roof panel seams, which had to be put back down and resealed with a combination of new and old screws and a sealant.

I was personally present when your second inspector, Don Kesterson (who would be more appropriately referred to as a defense expert as opposed to an "independent adjuster") inspected the roof and was told by D&L's employee, Daniel Levassevere, who actually witnessed and repaired the roof after the January 19, 2017 storm, that "the winds had lifted these panel sections up approximately 2 inches, tearing out the existing screws," which required D&L to resecure the panels back down using a sealant, the remaining old screws and new screws. The repairs to the damage are clearly visible in

**TIFFANY**
**& BOSCO**
P.A.

Nationwide/Chris Logan
c/o Bridget A. Moorhead
SELMAN BREITMAN, LLP
February 14, 2018
Page 3

the photographs attached to D&L's November 30, 2017 letter and prior email.  (*See* enclosed letter.)  D&L made clear that the "cause of damage was due to extreme high winds and heavy rain" causing "metal roof panels . [to be] . . . lifted by high winds." *Id.*

Your roofing expert, Donan, did not inspect the roof until March 9, 2017, which was two months after the storm and after all of the damage to the roof had been repaired, which explains his finding that "no metal roof panels are lifted, peeled back or missing due to wind."  With respect to your second adjuster, Don Kesterson, his inspection came almost a year after the event and everything had been fully repaired such that I would not expect him to see any remaining damage.  I have requested production of Mr. Kesterson's report on several occasions now; however, you have failed to produce same.  Please produce his report.

While it is acknowledged that this roof was generally in poor shape and had numerous previous leaks and repairs in other areas, those areas were not above this press. The damage to this press occurred on January 19, 2017 as a direct result of water coming through the roof above the press as a direct result of the winds damaging the roof (*see* enclosed letters).  The Donan engineer report clearly shows photographs of fresh repairs made by D&L to the damage caused to the roof by the January 19, 2017 storm.

The damage to the press was not the result of "wear and tear," "rust" or "corrosion," nor was it a "continuous" or "repeated" leak, over a period of fourteen (14) days or more.  Although the roof had some prior sporadic small leaks, they never spanned over a fourteen (14) day period of time.  There was no prior "workmanship" or "repairs" to the roof or its interior vinyl roofing insulation in this area above the equipment, prior to the loss.

Because the rain first caused damage to the roof, by lifting metal panels, it is a covered loss under the policy, which covers "direct physical loss of or damage to Covered Property at the premises, described in the Declarations, caused by or resulting from any Covered Cause of Loss."  (See Building and Property Coverage Form, at ¶ A.) Covered Causes of Loss include any "direct physical loss unless the loss is excluded or limited in this policy."  (See Causes of Loss – Special Form, at ¶A.)  As such, Media

**TIFFANY**
**&BOSCO**
P.A.

Nationwide/Chris Logan
c/o Bridget A. Moorhead
SELMAN BREITMAN, LLP
February 14, 2018
Page 4

Print's damage/direct physical loss to its printing equipment is covered unless specifically excluded.

The exclusions that you have cited are either inapplicable or not clear enough to exclude coverage. With respect to the Limitations (C)1(c)(1), which limits payment for loss or damage to "personal property in the building . . . caused by or resulting from rain . . . (provided) . . . the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters . . .," same is not applicable because the rain did come through the roof, which did first sustain damage, via the lifting of the roof panels and the bursting of its interior liner, before the Property Damage Occurred to Media Print's equipment. As you should note, Arizona courts strictly interpret insurance policies to provide coverage unless they clearly and unambiguously exclude the coverage, based upon a layperson's reading of the policy and reasonable expectations. State Farm v. Gibbs, 139 Ariz. 274, 678 P.2d 459 (App. Div. 1 1983).

As a result of Nationwide's continued denial of coverage in this matter, Media Print continues to lose the use of this press and has continued to incur significant damages in the form of lost profits and lost productivity caused by having to either turn away jobs that required this size of a press or trying to perform jobs on a larger press which is inefficient and actually result in a loss to Media Print. Please be advised that Nationwide's continued bad faith denial of coverage on this claim is costing Media Print an estimated $20,000.00 in damages every month.

In addition thereto, I have since produced to you several letters from Jewel Printing Machinery (see enclosed) one of the only and best known printing press brokers in town, who has opined that the cost to replace the press with a similar used press (as a new press of this type is no longer available and would cost in the millions) would be in the neighborhood of $750,000.00, installed.

Based upon the foregoing, I am making my final demand that Nationwide cover this loss in the estimated amount of $750,000.00 for the press, plus $260,000.00 in lost revenue, for a total of **$1,010,000.00** or face a claim for breach of contract and bad faith.



Nationwide/Chris Logan
c/o Bridget A. Moorhead
SELMAN BREITMAN, LLP
February 14, 2018
Page 5

Sincerely,

**TIFFANY & BOSCO, P.A.**

Richard C. Gramlich
For the Firm

RCG/ef
Enclosures: As stated
cc: Jamie Harr

BLANK



**D & L Commercial Roofing Southwest**

Roofing & Water Proofing Solutions Since 1980
2942 N. 24th. Street Suite 114 Phoenix, AZ. 85016
Office (602) 644-2493  Fax (602) 726-8597  Lic.#300036
Serving All of Arizona

Date:  8/8/17

Name:  Attila Veres

Address:   4002 N. 36th Ave.

City:   Phoenix, AZ.

Telephone:  602 321- 0177

RE:  Roof Evaluation for building leaks at 4002 N. 36th Ave.  Phoenix, Az.

1)  Upon our inspection after storm activity on January 19th.

2)  Existing metal wall panels had been blown off and loose; metal roof panels were also lifted by high winds in this same area. This area is located over a large yellow printing press.

3)  Existing roof panels needed to be re-secured with sealant and new fasteners.

4)  Cause of damage was due to extreme high winds and heavy rain.

Thank You for your Business

Greg DiMatteo

**Greg D DiMatteo**
Digitally signed by Greg D DiMatteo
DN: cn=Greg D DiMatteo, o=US, ou=D & L
Commercial Roofing Southwest,
email=greg@dlsouthwest.com
Date: 2017.08.08 17:53:49 -07'00'



BLANK

From: "D & L Roofing Southwest" <greg@dlsouthwest.com>
Date: October 28, 2017 at 2:41:47 PM MST
To: "Jeffrey Guenther" <jgprints@gmail.com>
Subject: RE: Further Clarification Needed

Hello Jeff,

Below is a statement of facts regarding the micro burst and heavy rain storms that occurred on January 19, 2016. Also attached are some pictures of the area which was most affected by this storm; these are completed pictures. No pictures were taken prior to repairs as it was all hands on deck to get repairs completed, more storms were on the way.

1)   We were in the process of performing preventive maintenance on the entire 20,000sq foot building, at no time were we in progress of any re-roofing or taking the existing roof apart, in other words opening it up.

2)   Prior to the micro burst occurring on 1/19 and 1/20/16 the A/C units were worked on and all waterproofed. We know they were watertight as they had no leaks in any prior storms.

3)   When we arrived on-site after the 1/19/16 storm Media Print directed us to where new leak problems occurred, they were over a large printing press. Floors were still wet and it appeared as though a large volume of water had leaked in this area. There was no more water coming in at this time, we went to inspect the roof area above. There was still standing water behind the A/C units, as this area will fill to a point before spilling over onto an open runway to exit. The fact that no water was still coming inside told us the completed repairs behind the A/C units was in a watertight condition. Further inspection to determine where the leaks occurred we found loose panel seams approximately eight to ten feet directly above the A/C units which are over this printing press. There were loose and missing screws which were laying in the area of these panel seams. These panels were pulled loose from the excessive wind, we could lift the ends of the panels with ease. We found moisture underneath these panel laps and could see where water had blown under these laps and traveled on top of the existing insulation panels directly under the roof panels. Existing insulation panels have a plastic wrapping over them, water traveled in from these panel seams from the excessive force caused by the micro burst.  Moisture traveled on top of insulation panels flowing down to a termination point in the insulation which occurred where A/C duct work was located under the existing roofing panels and then coming down inside the building. This duct work is exposed and located directly above the large printing press. With the large volume of rain coupled with the high winds lifting the roof panels, a trough was created on top of the insulation panels channeling all moisture into the building over this printing press area. This panel seam runs the distance of the building, other areas were found to have this condition as well.

4)   We removed remaining loose screws added new sealants under this panel seam and added new larger diameter fasteners. There were more storms that came in after completed repairs with no leak problems in this area.

5)   No additional charges were billed to our customer.

6)   Pictures attached 1,2,3 and 5.  Pictures 1,2, and 3 show the repaired panel seam, picture 5 is taken above and the A/C units are visible.

Thank You

Greg DiMatteo

D & L Commercial Roofing Southwest

602-301-0806









BLANK



**D & L Commercial Roofing Southwest**

Roofing & Water Proofing Solutions Since 1980
2942 N. 24th. Street Suite 114 Phoenix, AZ. 85016
Office (602) 644-2493  Fax (602) 726-8597  Lic.#300036
Serving All of Arizona

Date: 11/30/17

Jeffery Guenther
Media Print Inc.

Re:  Clarification needed for:  Media Print Inc. Roof leaks on January 19, 2016.

Below is a statement of facts regarding the micro burst and heavy rain storms that occurred on January 19, 2016. Also attached are some pictures of the area which was most affected by this storm; these are completed pictures. No pictures were taken prior to repairs as it was all hands on deck to get repairs completed, more storms were on the way.

1)      We were in the process of performing preventive maintenance on the entire 20,000sq foot building, at no time were we in progress of any re-roofing or taking the existing roof apart, in other words opening it up.
2)      Prior to the micro burst occurring on 1/19 and 1/20/16 the A/C units were worked on and all waterproofed. We know they were watertight as they had no leaks in any prior storms.
3)      When we arrived on-site after the 1/19/16 storm Media Print directed us to where new leak problems occurred, they were over a large printing press. Floors were still wet and it appeared as though a large volume of water had leaked in this area. There was no more water coming in at this time, we went to inspect the roof area above. There was still standing water behind the A/C units, as this area will fill to a point before spilling over onto an open runway to exit. The fact that no water was still coming inside told us the completed repairs behind the A/C units was in a watertight condition. Further inspection to determine where the leaks occurred we found loose panel seams approximately eight to ten feet directly above the A/C units which are over this printing press. There were loose and missing screws which were laying in the area of these panel seams. These panels were pulled loose from the excessive wind, we could lift the ends of the panels with ease. We found moisture underneath these panel laps and could see where water had blown under these laps and traveled on top of the existing insulation panels directly under the roof panels. Existing insulation panels have a plastic wrapping over them, water traveled in from these panel seams from the excessive force caused by the micro burst.  Moisture traveled on top of insulation panels flowing down to a termination point in the insulation which occurred where A/C duct work was located under the existing roofing panels and then coming down inside the building. This duct work is exposed and located directly above the large printing press. With the large volume of rain coupled with the high winds lifting the roof panels, a trough was created on top of the insulation panels channeling all moisture into the building over this printing press area. This panel seam runs the distance of the building, other areas were found to have this condition as well.
4)      We removed remaining loose screws added new sealants under this panel seam and added new larger diameter fasteners. There were more storms that came in after completed repairs with no leak problems in this area.
5)      No additional charges were billed to our customer.
6)      Pictures attached 1, 2, 3 and 5.  Pictures 1, 2, and 3 show the repaired panel seam, picture 5 is taken above and the A/C units are visible.


Thank You

Greg DiMatteo
D & L Commercial Roofing Southwest
602-301-0806









BLANK



**PRINTING MACHINERY**

Jeffery Guenther
Jamie Harr
Media Print Inc
4002 N 36th Ave,
Phoenix, AZ 85019

April 5th, 2017

Gentleman:

As per your request I am submitting this letter to you regarding the evaluation we performed on your Hitachi Web press back on January 23, 2017. Please review this and let me know if we can be of further assistance.

The evaluation is due directly to the incident on Thursday 1-19-17 when the roof above the press failed which resulted in water pouring down on the press in several different locations causing severe electrical shorts and other forms of damage.

I wish I could present you with a concrete estimate but due to the unknown degree of damage found that is impossible, the evaluation process could be as much as $50,000 and as little as $ 20,000 and will require one week or possibly longer to complete.

This cost of evaluation does not include any repair of the press, only the evaluation. Repairs could easily run more than $ 150,000 to $250,000 depending on what damage we find and if the press is not beyond repair or has been damaged to a degree that it is deemed not usable as a long-term fixture of your business in future years as it would have been pre-damage.

Regards,

Frank Jewell
Jewell Printing Machinery LLC
Jewellprintingmachinery.com

SHIPPING ADDRESS: 3601 West Thomas Road Suite 1121  •  Phoenix, AZ 85017
BILLING ADDRESS: 7680 West Mary Jane Lane  •  Peoria, AZ 85382
Cell: (602) 524-9433



**PRINTING MACHINERY**

Media Print Inc
4002 N 36th Ave,
Phoenix, AZ 85019
December 18, 2017

Dear members and representing individuals,

As per your request I am submitting this letter to hopefully answer a few questions regarding the Hitachi 5 unit web press you have on your floor.

As we all know the press was damaged by a major roof leak which allowed massive amounts of water to drain onto and into the press and its accessories. We spent many hours troubleshooting the electrical system at that time to see what damage we could find. We discovered SEVERAL contactors, relays and other electrical components that were damaged by either water directly or by the shorting out of circuits which damaged items indirectly. We were never able to finalize the list of problems due to the debates over who was going to pay for the time necessary to bring this to a close. Please note that this was only the electrical system, I have serious concerns of other water damage now that the press has set idle for so long. We have numerous bearings, bushings, machined surfaces that more than likely have been damaged by the water. I fully expect the see serious rust issues when and if we are allowed to tear into the press.

I would expect the charges to dissemble, inspect and evaluate the press could exceed $ 200,000.00. In order to determine the extent of the damage the press would need to be torn down further than if we were just going to relocate it. All guards, cylinders, bearing and ink systems would need to be removed from the press, I would expect to spend 30 to 45 days evaluating the press.

SHIPPING ADDRESS: 3601 West Thomas Road Suite 1121 • Phoenix, AZ 85017
BILLING ADDRESS: 7680 West Mary Jane Lane • Peoria, AZ 85382
Cell: (602) 524-9433

# JEWELL
## PRINTING MACHINERY

You also asked me what a replacement press would cost. I have checked with a few of my associates and the number I am hearing is $ 700,000 to 750,00.00 which would be an installed price. I would estimate the cost to remove your press and load it onto transports and I assume take to the scrap yard to be in the area of $ 35,000 to 40,000.00.

I hope this helps you get the process moving forward.

Regards

Frank Jewell
Jewell Printing Machinery
Jewellprintingmachinery.com



## PRINTING MACHINERY

Media Print Inc
4002 N 36th Ave,
Phoenix, AZ 85019
January 8,2018


Dear members and representing individuals,
As per your request I am submitting this letter to hopefully answer a few
questions regarding the Hitachi 5 unit web press you have on your floor.
As we all know the press was damaged by a major roof leak which allowed
massive amounts of water to drain onto and into the press and its accessories.
We spent many hours troubleshooting the electrical system at that time to see
what damage we could find. We discovered SEVERAL contactors, relays and other
electrical components that were damaged by either water directly or by the
shorting out of circuits which damaged items indirectly. We were never able to
finalize the list of problems due to the debates over who was going to pay for the
time necessary to bring this to a close. Please note that this was only the electrical
system, I have serious concerns of other water damage now that the press has set
idle for so long. We have numerous bearings, bushings, machined surfaces that
more than likely have been damaged by the water. I fully expect the see serious
rust issues when and if we are allowed to tear into the press.
I would expect the charges to dissemble, inspect and evaluate the press could
exceed $ 200,000.00. In order to determine the extent of the damage the press
would need to be torn down further than if we were just going to relocate it. All
guards, cylinders, bearing and ink systems would need to be removed from the
press, I would expect to spend 30 to 45 days evaluating the press.